IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONIA G.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

Defendant.

Case No. 6:24-cv-01779-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Tonia G. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's

("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C.

§ 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and

remands for further administrative proceedings.

///

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff filed her DIB application on March 22, 2022, alleging a disability onset date of July 30, 2020.[2] (Tr. 15.) She had at least a high school education and past relevant work as a loan processor. (*Id*. at 24.) In her application, Plaintiff alleged disability due to arthritis in her hands, swollen fingers, and pinched nerves in her right shoulder. (*Id*. at 36-38, 196.)

The Commissioner denied Plaintiff's application initially on July 21, 2022, and upon reconsideration on February 8, 2023. (*Id*. at 15, 58-65, 74-78.) On February 15, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 84-85.) Plaintiff and a vocational expert ("VE") testified at an administrative hearing held on November 30, 2023. (*Id*. at 33-49.) On January 5, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id*. at 15-26.) On August 27, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

///

///

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-CV-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id*. Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id*. (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2025 (Tr. 17) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2025, she is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-CV-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation omitted). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 17-26.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 30, 2020, the alleged onset date. (*Id.* at 17.) At step two,

PAGE 4 – OPINION AND ORDER

the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: polymyositis, bilateral hand osteoarthritis, and chronic right trapezius spasm. (*Id*.)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*. at 20.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations:

> [S]he can lift up to [ten] pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. She can occasionally climb ladders, ropes, and scaffolds and crawl. [Plaintiff] can occasionally reach with the right upper extremity and occasionally handle and finger bilaterally. She must avoid concentrated exposure to hazards and extreme cold.

(*Id*. at 19.)

At step four, the ALJ concluded that Plaintiff has past relevant work as a loan processor but is unable to perform such work due to her RFC limitation of occasional handling and fingering. (*Id*. at 24.) At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including gate guard. (*Id*. at 25.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's symptom testimony (Pl.'s Br. at 3-16, ECF No. 12) and by failing properly to evaluate the medical opinion of Rola Baker, M.D. ("Dr. Baker"). (*Id*. at 16-19.)

## I.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ committed harmful error by failing to link Plaintiff's discounted symptom testimony to specific medical records and explain why those records contradict her symptom testimony. (Pl.'s Br. at 3-16; Pl.'s Reply at 1-15, ECF No. 18.) The Commissioner responds that substantial evidence supported the ALJ's discounting of Plaintiff's symptom testimony. (Def.'s Br. at 2-10, ECF No. 15.)

PAGE 5 – OPINION AND ORDER

A.      Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

B.      Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 19.) The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ did not meet that standard here.

1.      Plaintiff's Testimony

At the ALJ hearing, Plaintiff testified that she previously worked in the field of mortgage loans for sixteen years and stopped working due to her diagnosis of osteoarthritis which causes "lots of swelling and bending of [her] fingers." (Tr. 36.) She testified that she can no longer lay her hands flat, which makes it difficult for her to hold a pen to write, type, or perform other computer work. (*Id*. at 37.) Her symptoms were worse than when she stopped working and she

PAGE 6 – OPINION AND ORDER

can only perform tasks with her hands for five minutes and then must stop due to pain. (*Id*.) Plaintiff claimed that all ten of her fingers have swelling and that the bending of her joints is "permanent." (*Id*. at 38.)

With respect to her right shoulder impairment, Plaintiff testified that she has "a lot of pinched nerves which then causes tingling and numbness down [her] arm." (*Id*.) She testified that these symptoms could be caused by her recent diagnosis of polymyositis,[3] and when asked by the ALJ about the improvement of her symptoms with Prednisone, she answered that it did help with muscle pain but that she could no longer take it due to its long-term negative effects. (*Id*. at 38-39.) Plaintiff testified that she takes Norco for pain and Celebrex and Orphenadrine Citrate as muscle relaxers to control her symptoms. (*Id*. at 39.) She indicated that these medications have negative side effects too, including insomnia. (*Id*.) She also experiences weight gain and drowsiness with these medications and only gets four-to-five hours of sleep per night due to the pain in her hands. (*Id*. at 39-40.) Finally, Plaintiff testified that her ability to focus and concentrate on tasks has become "increasingly difficult" because it takes her a lot longer to complete an individual task, she loses her train of thought, and it takes her a "few hours" to go back to the original task at hand. (*Id*. at 40.)

///

///

---

[3] "According to Stedman's Medical Dictionary, polymyositis is the '[i]nflammation of a number of voluntary muscles simultaneously.' The Myositis Association describes polymyositis as '[m]uscle weakness [that] usually happens over days, weeks or months. The weakness begins with muscles closest to and within the trunk of the body. Neck, hip, back and shoulder muscles are examples. Some patients also have weakness in muscles farther from the trunk, like hands and fingers. Some PM patients experience muscle pain, breathing problems, and trouble swallowing.'" *Dumas v. Comm'r of Soc. Sec.*, No. 04-CV-4625 (SLT), 2008 WL 4104685, at *1 (E.D.N.Y. Sept. 4, 2008) (citations omitted).

### 2.    The ALJ's Evaluation of Plaintiff's Testimony

The ALJ discounted Plaintiff's symptom testimony because it was inconsistent with the objective medical evidence, as well as symptom control and "improvement" with medication. (*Id*. at 21-22.)

### 3.    Disposition

The Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's symptom testimony.

#### a.    Medical Evidence

Plaintiff argues that the ALJ failed to link Plaintiff's specific symptom testimony that the ALJ found not credible to contradictory medical evidence and thus did not provide the necessary information for meaningful judicial review. (*See* Pl.'s Br. at 4-7, citing *Brown-Hunter*, 806 F.3d at 492); *see also Brown-Hunter*, 806 F.3d at 494 (holding that the ALJ erred by failing to identify the testimony she found not credible and consequently "did not link that testimony to the particular parts of the record supporting her non-credibility determination").

The Court need not reach Plaintiff's arguments because even if the ALJ satisfied the *Brown-Hunter* specificity requirements and provided clear and convincing reasons to discount Plaintiff's symptom testimony based on the objective medical evidence, that cannot be the only reason in light of the Court's finding below that substantial evidence did not support the ALJ's other reason to discount Plaintiff's testimony. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))).

///

**b.        Improvement with Treatment**

Plaintiff argues that the ALJ erred by discounting her testimony based on her improvement when complying with appropriate treatment. (*See* Pl.'s Br. at 6-14.) The Court agrees.

An ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment or medication. *See Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted). That rationale assumes that "[i]mpairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ first included standard boilerplate language: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21.) This language alone does not meet the Ninth Circuit's specificity requirements. *See Finney*, 2022 WL 17830000, at *1 ("The ALJ . . . made use of boilerplate language stating that [the plaintiff's] statements are 'not entirely consistent with the medical evidence and other evidence in the record.' This boilerplate explanation is insufficiently specific.") (citation omitted). However, the ALJ did not rely solely on this boilerplate language, but also cited examples of Plaintiff's symptom improvement with Prednisone, Mobic, Norco,

and Methotrexate. (Tr. 22.) Nevertheless, the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, particularly regarding her osteoarthritis and polymyositis.

The ALJ noted that "[Plaintiff's] pain was stated to be 'well[-]controlled' with Mobic and Norco, 'which enables her to do her [activities of daily living ('ADL')] and take care of her infirm mother.'" (*Id*., citing *id.* at 374.) The ALJ also cited Plaintiff's Prednisone prescription, "to which she had a 'fairly dramatic response,' or 'significant improvement[.]'" (*Id*., citing *id.* at 366-67.) The ALJ further noted that Plaintiff was "still 'doing well' with Prednisone as of September 2023" but was then "transitioned to [M]ethotrexate and this was 'helping' as of her last contact with Dr. Baker." (*Id*., citing *id.* at 365, 494, 521.)

As Plaintiff persuasively argued in her brief (Pl.'s Br. at 7), these cited improvements were inconsistent with the medical record as a whole. Plaintiff notes that while she experienced *some* improvement with Prednisone, her provider took her off of the medication due to side effects and her symptoms worsened. (*Id*., citing *id.* at 38.) Indeed, an emergency department note corroborates that Plaintiff "was on a [P]rednisone taper for her osteoarthritis but was having blood pressure spikes and was retaining water so she was taken off the [P]rednisone and placed on Lasix to get the fluid off." (*Id*. at 289.) Dr. Baker also noted that "Prednisone did not appreciably help with the inflammatory effects of [Plaintiff's osteoarthritis] but it has increased her appetite and weight" and "[t]herefore [we] will discontinue[.]" (*Id*. at 370.) This evidence is consistent with Plaintiff's hearing testimony that Prednisone was not meant to be "long-term" and caused significant weight gain. (*Id*. at 39.) Thus, the ALJ erred in discounting Plaintiff's testimony on the ground that Prednisone improved her symptoms.

///

PAGE 10 – OPINION AND ORDER

Similarly, the ALJ erred by relying on Plaintiff's Methotrexate prescription to discount her symptom testimony. Although the record indicates that Methotrexate was "helping" at one point in time (*id*. at 521), some temporary improvement in symptoms is not enough to support the ALJ's conclusion that Plaintiff's impairments no longer seriously affected her ability to function in a workplace. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). The Court finds that the cited evidence does not rise to the level of substantial evidence of improvement and effective treatment for Plaintiff's impairments (osteoarthritis, polymyositis, and right shoulder spasm) to discount her symptom testimony.

Furthermore, the ALJ's other citations to the medical record relating to Plaintiff's right shoulder pain do not directly address her primary complaints of osteoarthritis, polymyositis, or right shoulder spasm. Although the record supports a finding that physical therapy relieved Plaintiff's right trapezius pain temporarily in May 2023, her symptoms related to osteoarthritis, polymyositis, and right shoulder spasm persisted. (*See, e.g.*, Tr. 410.) In fact, the medical record cited by the ALJ reflects that "[t]he patient has improved in [range of motion] but continues to present with impairments in strength and difficulty with functional activities including gripping, reaching, recreation and would benefit from additional intervention." (*Id*.) The ALJ's reliance on this treatment record does not support a conclusion that Plaintiff's symptoms were adequately controlled and improved with treatment. (*See id*. at 521-22, reflecting that Plaintiff continued to experience cervical pain and tenderness on both sides of her neck in November 2023, along with

PAGE 11 – OPINION AND ORDER

decreased range of motion, despite being discharged from physical therapy and taking Prednisone before her switch to Methotrexate).

Based on its review of the record as a whole, the Court concludes that substantial evidence does not support the ALJ's discounting of Plaintiff's symptom testimony based on evidence of improvement and effective treatment. As a result, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony. *See Garrison*, 759 F.3d at 1015 (holding that the ALJ improperly cited effective treatment as a reason to discount the plaintiff's pain testimony where the treatment provided only partial and temporary relief).

## II.    MEDICAL OPINION EVIDENCE

Plaintiff also argues that substantial evidence does not support the ALJ's reasons for partially discounting the opinion of her treating physician, Dr. Baker. (Pl.'s Br. at 16-19.) The Commissioner responds that the ALJ properly found Dr. Baker's opinion partially persuasive because it was poorly supported and inconsistent with other evidence. (Def.'s Br. at 10-14.)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most

PAGE 12 – OPINION AND ORDER

important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]'" "the regulations mandate discussion of these other factors[.]" *Id*. at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id*. at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

PAGE 13 – OPINION AND ORDER

treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

The Court concludes that the ALJ erred in discounting Dr. Baker's medical opinion.

#### 1.    Dr. Baker's Medical Opinion

Dr. Baker completed a treating source statement on October 4, 2022. (*See* Tr. 386-90.) Dr. Baker indicated that she had been treating Plaintiff monthly since 1994 and that her diagnoses include "severe generalized osteoarthritis, axial [and] appendicular[.]" (*Id.* at 386.) Dr. Baker indicated that Plaintiff's conditions were expected to last at least twelve months, were "progressive[,]" and "worsening over time[.]" (*Id.*) Dr. Baker listed Plaintiff's symptoms to include pain, decreased ability, sleep disruptions, impairment of ADLs, and an "inability to lift." (*Id.* at 387.) Dr. Baker described Plaintiff's relevant clinical findings and test results as "peripheral joint osteophytes [with] axial spondylosis[,] and neuromuscular impingement syndromes from compensatory spasm[.]" (*Id.*) Dr. Baker opined that because of these impairments, Plaintiff required rest periods two times per hour. (*Id.*) Dr. Baker reported that Plaintiff's impairments began in August 2016 and that she would be off task twenty-five percent of the workday and absent more than four days per month due to the "pain, immobility, [and] weakness" from her impairments. (*Id.* at 390.)

#### 2.    The ALJ's Findings

The ALJ found Dr. Baker's opinion only "partly persuasive." (*Id.* at 23.) The ALJ stated that Dr. Baker's opinion was "partly persuasive in supporting the need for reduced exertion, but

PAGE 14 – OPINION AND ORDER

not persuasive concerning the degree of limitation." (*Id*.) The ALJ explained that Dr. Baker provided "little explanation for the checkbox responses and cite[d] conditions not in evidence" and "[i]maging fails to support the presence of spondylosis or generalized osteoarthritis." (*Id*.) To support this conclusion, the ALJ indicated that the "cervical x-rays specifically note '[n]o spondylosis or spondylolistheses and shoulder x-rays show no abnormality." (*Id*., citing *id.* at 339, 399-400.) Finally, the ALJ took issue with the fact that Dr. Baker noted Plaintiff's limitations began in August 2016, "yet [Plaintiff] continued to work at substantial gainful activity for nearly four more years in a job that she described as requiring constant use of the hands for writing, typing, or handling small objects." (*Id*., citing *id.* at 164-73, 179-80.)

### 3.    Disposition

The Court concludes that the ALJ erred in evaluating Dr. Baker's opinion because the ALJ did not adequately discuss the required supportability and consistency factors and failed to articulate an explanation supported by substantial evidence. *See Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provid[es] an explanation supported by substantial evidence").

With respect to the supportability factor, the ALJ was correct in noting that Plaintiff's imaging records did not support Dr. Baker's opinion that Plaintiff exhibited axial spondylosis. Indeed, Dr. Baker noted in January 2023 that Plaintiff's "C-spine x-ray in February of last year was within normal limits with no evidence of significant cervical spondylosis or disc space narrowing." (*Id*. at 498; *see id*. at 339.) However, the ALJ's finding that imaging failed to support Plaintiff's "generalized osteoarthritis" is not supported by the record. The ALJ only discussed imaging related to Plaintiff's cervical spondylosis but did not explain how that imaging related to her severe hand osteoarthritis. (*See id*. at 23.) In fact, Dr. Baker's clinical observations of Plaintiff over the years demonstrated the severity of the arthritis in Plaintiff's

PAGE 15 – OPINION AND ORDER

hands. (*See id*. at 374, "[P]rimarily problematic is severe osteoarthritis of both hands especially the MCP joint of her right hand, which is inhibiting ADLs."; *id.* at 375, "Generalized osteoarthritis is ongoing"; *id.* at 379, "Marked increased pain over the long thumb extensor on the right side . . . Positive Finklestein's test.") By omitting a supportability evaluation of Dr. Baker's findings relating to Plaintiff's osteoarthritis, the ALJ's supportability analysis was not supported by substantial evidence. *See, e.g.*, *Schmitzer v. O'Malley*, No. 1:22-cv-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding that the ALJ erred in the supportability discussion where "the ALJ did not make any findings as to what extent—if any— [the provider] supported the limitations identified in" the opinions and "failed to explain to what extent [the provider]'s own treatment records did not support his opinions") This omission undermines the ALJ's decision given that osteoarthritis is Plaintiff's primary impairment and the cause of most of Plaintiff's functional limitations.

The ALJ also erred in his evaluation of the consistency factor. The ALJ only cited the fact that Plaintiff "continued to work" to conclude that Dr. Baker's opinion was inconsistent with the record. (Tr. 23.) The ALJ's cited reason does not rise to the level of substantial evidence in light of the statements from Plaintiff's former supervisor regarding her actual work performance during the relevant time period. Plaintiff's former supervisor explained that from 2016 to 2020, Plaintiff's performance suffered and declined due to her impairments. (*See id*. at 267, "A few years before she left, I started to notice her ability to function like she used to diminish. She began to become slower in all her duties. I realized it was her hands and fingers as they were swollen and crooked, not able to work the way they used to[], and she was in some pain . . . [Plaintiff] could not do her job anymore . . . she had no choice but to resign.") In light of this evidence, the ALJ erred by relying only on Plaintiff's ability to continue working to discount Dr.

PAGE 16 – OPINION AND ORDER

Baker's opinion. *See* 20 C.F.R. § 404.1520c(c)(2) (providing that the agency "will explain how [the ALJ] considered the . . . consistency factor[]"); *see also Woods*, 32 F.4th at 792 (holding that the agency must "explain how [it] considered the supportability and consistency factors").

Furthermore, the ALJ did not address whether Dr. Baker's opinion was consistent with evidence from other medical sources, including Derek Leinenbach, M.D. ("Dr. Leinenbach"). Dr. Leinenbach evaluated Plaintiff in January 2023 and observed the severity of Plaintiff's osteoarthritis and back pain, documenting "tense and tender right cervical paraspinal and trapezius muscles, and mild to moderate swelling and enlargement of the joints of both hands." (Tr. 403.) The ALJ found Dr. Leinenbach's opinion "largely persuasive" due to observations during an in-person examination that Plaintiff could "reach for, grip and hold objects to the palm by the last three digits of either hand but her grip is loose due to the arthritic hand pain in the hands" and "[s]he can grasp and manipulate large and small objects with the first three digits but does so slowly and mildly clumsily due to the arthritis in the hands." (*Id.* at 23, citing *id.* at 401-04.) The ALJ erred by not evaluating the consistency between Dr. Baker's and Dr. Leinenbach's opinions where the findings of Dr. Leinenbach that the ALJ found persuasive align with Dr. Baker's long-term clinical observations. (*Compare id.* at 403, "The right cervical paraspinal and trapezius muscles are tense and tender to palpation . . . There is mild to moderate swelling and enlargement of the joints of both hands, most notably at the MCP and PIP joints. There is diffuse tenderness to palpation at the MCP and PIP joints of the right hand with sparing of the thumb CMC joint." *with id.* at 374, "primarily problematic is severe osteoarthritis of both hands especially the MCP joint of her right hand, which is inhibiting ADLs"; *id.* at 377, "Exam confirms marked trapezius spasm bilaterally, worse on the right than on the left."; *id.* at 379, "Exam confirms again marked tenderness at C6/C7 right with decreased cervical range of motion

PAGE 17 – OPINION AND ORDER

. . . Marked increased pain over the long thumb extensor on the right side . . . Positive Finklestein's test.") As a result, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. Baker's medical opinion. *See, e.g.*, *Thomas S. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00169-FVS, 2021 WL 3132731, at *9 (E.D. Wash. July 22, 2021) ("However, irrespective of whether the ALJ properly considered the supportability factor under the new regulations, [the medical] opinion must be reconsidered on remand because the ALJ failed to properly consider the consistency factor.").

## III.    REMEDY

Plaintiff asks the Court to remand for an award of benefits. (Pl.'s Br. at 19; Pl.'s Reply at 15-19.) The Commissioner responds that "there are conflicting medical opinions in the record[,]" citing the "unchallenged findings that the assessment of Dr. Wiggins was partially persuasive and the opinion of Dr. Leinenbach was largely persuasive." (Def.'s Br. at 15.)

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted). The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-

PAGE 18 – OPINION AND ORDER

as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021.

### B.    Analysis

Applying the credit-as-true standard here, the Court concludes that conflicts and ambiguities in the record remain and require further administrative proceedings.

Specifically, the ALJ must resolve outstanding contradictions between the medical record and Dr. Baker's opinion. For example, Dr. Baker opined that Plaintiff could utilize her hands, fingers, and arms for only fifteen percent of an eight-hour workday. (*See* Tr. 389.) While the ALJ found this opinion "partly persuasive in supporting the need for reduced exertion," the ALJ nevertheless concluded that Plaintiff could handle and finger for up to two hours. (*Id*. at 23-24.) In light of the Court's finding that the ALJ erred in evaluating Dr. Baker's opinion and Plaintiff's symptom testimony, ambiguities remain regarding the extent of Plaintiff's vocational capabilities relating to her bilateral hand osteoarthritis. In addition, the ALJ failed properly to analyze the steady decline in Plaintiff's work performance from 2016 to 2020 and overlooked her former supervisor's statements documenting that Plaintiff was forced to resign due to her severe impairments. Furthermore, the ALJ erroneously relied on Plaintiff's "fairly dramatic response" to Prednisone and other medications to discount her symptom testimony, while failing adequately to consider why her provider discontinued Prednisone or evaluate the efficacy of Methotrexate in addressing her symptoms. (*See id*. at 521.)

Further proceedings will allow the ALJ to reevaluate the medical opinions, Plaintiff's impairments and resulting functional limitations, reformulate the RFC, and obtain updated VE testimony. Accordingly, further proceedings would serve a "useful purpose" here. *See Garrison, 759 F.3d at 1020*; *Treichler, 775 F.3d at 1094* ("Given the conflicts and ambiguity that remain in

PAGE 19 – OPINION AND ORDER

the record, however, we remand for further proceedings rather than for an award of benefits.");
*see also McAuley v. Kijakazi*, No. 21-16334, 2022 WL 2235462, at *1 (9th Cir. June 22, 2022)
(holding that where "the district court determined that . . . 'conflicts and ambiguities' existed, . . .
it was not an abuse of discretion for the district court to conclude that additional administrative
proceedings were warranted" (citing *Treichler*, 775 F.3d at 1104-05)).

For these reasons, the Court reverses the Commissioner's decision and remands the case
for further administrative proceedings.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and
REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 2nd day of July, 2026.

/s/ Stacie F. Beckerman
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 20 – OPINION AND ORDER